**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 20-1154

A.J.; K.J.,
Appellants

v.

LANCASTER COUNTY; CRYSTAL A. NATAN, Exec Director;
ROBIN BOYER; ALEXIS PALMER; CHRISTOPHER HORNBERGER;
CHRISTINE SEBASTIAN-BAIR; PAT DOES #1-10; ESQ. COURTNEY J.
RESTEMAYER; ESQ. DAVID J. NATAN; ATTORNEY DOES #1-10

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-19-cv-01768)
District Judge: Hon. Joseph F. Leeson, Jr.

Submitted Under Third Circuit L.A.R. 34.1(a)
September 10, 2020

Before: CHAGARES, HARDIMAN, and MATEY, *Circuit Judges*.

(Opinion filed: September 16, 2020)

OPINION*

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

The Lancaster County Children and Youth Services Agency ("CYS") temporarily barred A.J. and K.J. ("Parents") from unsupervised contact with their children, L.R.J. and L.J. The Parents sued the County and two CYS employees, alleging violations of the Parents' substantive-due-process rights. The District Court dismissed the Parents' complaint for failure to state a claim. We will affirm.

## I. BACKGROUND[1]

One morning, the Parents discovered that their infant son L.R.J. injured his arm while sleeping. They brought the child to the Chester County Hospital, where a hospital staff member reported the injury to CYS, stating that any "suspicion for abuse [was] low." (App. at 26.) Soon after, the Parents took L.R.J. to see Dr. Malcolm Ecker, a pediatric orthopedic surgeon at the Children's Hospital of Philadelphia ("CHOP"). After the visit, nurse Dyana Cannon told CHOP's Suspected Child Abuse and Neglect Team ("SCAN Team") and CYS that she had concerns about whether L.R.J.'s arm was fractured because of abuse. Ms. Cannon asked the Parents to bring L.R.J. back to CHOP the next day, but the SCAN Team's evaluation revealed no other fractures, bruising, or other signs of trauma, and its "official final diagnosis" was that L.R.J.'s injury "was an accidental fracture." (App. at 30.)

---

[1] Because we are reviewing the District Court's decision to dismiss the Parents' complaint under Rule 12(b)(6), we assume those allegations are true and draw all reasonable inferences from those allegations in favor of the Parents. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

A few days later, after meeting with CYS caseworker Christopher Hornberger, the Parents agreed to a 30-day safety plan prohibiting unsupervised contact between them and L.R.J.[2] A state court ultimately rejected CYS's continued efforts to separate the Parents and their children, and this federal lawsuit followed.

## II. DISCUSSION

The Parents' complaint alleges substantive-due-process claims against the County and against Mr. Hornberger and his supervisor Alexis Palmer in their individual capacities,[3] and a failure-to-train claim against the County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The District Court held that the Parents failed to state any claim upon which relief could be granted and dismissed the complaint.[4]

## A. The Substantive-Due-Process Claims

To prevail on a substantive-due-process claim, a plaintiff must show that the defendant's conduct "shock[ed] the conscience." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 241 (3d Cir. 2013). As the defendants are a child welfare agency and its employees, that standard is met only if they lacked "reasonable and articulable evidence giving rise to a reasonable suspicion that [L.R.J. had] been abused or [was] in imminent danger of abuse" at the time of the challenged action. *Id.* That standard is not satisfied here.

---

[2] The Parents later agreed to extend the plan by 60 days.

[3] The complaint contains substantive-due-process claims against Mr. Hornberger and Ms. Palmer in their official capacities, but the District Court dismissed these claims as duplicative of the individual-capacity claims. The Parents do not challenge that ruling on appeal. The complaint also contains a claim against paralegal Christine Sebastian Bair, but the District Court dismissed it with the Parents' consent.

[4] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review. *Morse*, 132 F.3d at 906.

3

The Parents base their claims on several actions beginning with the 30-day safety plan. But by then, the defendants had at least *some* "reasonable and articulable evidence," since they had received a suspected-abuse report from Ms. Cannon several days earlier. The Parents argue this evidence was outweighed by, among other things, Chester County Hospital's belief that any "suspicion for abuse was low" and the CHOP SCAN Team's "official final diagnosis" of an "accidental fracture." But even if defendants' decision to ignore these and other contraindications was *negligent*, we cannot say that defendants "consciously disregarded a *great* risk that there had been *no* abuse." *Id.* at 241 (emphasis added). *Compare id.* at 242–44 (officials had reasonable suspicion where plaintiff was listed "as an indicated perpetrator of child abuse" in state registry, even though listing was ten years old and officials had visited plaintiff's home several times and found no problems), *with Croft v. Westmoreland Cnty. Child. & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997) (a "six-fold hearsay report by an anonymous informant" did not provide reasonable suspicion).

And the justification for defendants' actions grew over time. They learned that a CHOP doctor diagnosed L.R.J.'s injury as "inflicted rather than accidental" (App. at 37) and that Dr. Ecker believed L.R.J.'s injury "was not consistent" with the Parents' explanation (App. at 40). With such reasonable suspicion, defendants' conduct did not shock the conscience. So the District Court's dismissal of the substantive-due-process claims will be affirmed.[5]

---

[5] The District Court believed that the defendants' actions did not implicate the Parents' substantive-due-process rights because the Parents never lost custody of their

**B.    The *Monell* Claim**

The District Court held that the failure-to-train claim against the County fell with the substantive-due-process claims, noting that "a municipality cannot be held liable on a *Monell* claim absent an underlying constitutional violation." (App. at 10 (quoting *Johnson v. City of Philadelphia*, 837 F.3d 343, 354 n.58 (3d Cir. 2016)).) With no viable substantive-due-process claims remaining, and with no argument from the Parents as to why the principle stated in *Johnson* does not apply here, we will affirm the District Court's dismissal of the *Monell* failure-to-train claim.

## III. CONCLUSION

For those reasons, we will affirm the District Court's dismissal of the Parents' complaint.

---

children. *But see Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion) (noting that the "right of parents to make decisions concerning the care, custody, and control of their children" is "fundamental" and thus protected by substantive due process); *Schulkers v. Kammer*, 955 F.3d 520, 542 (6th Cir. 2020) (concluding that prohibiting unsupervised contact between a mother and child "abridged the [mother's] due process right to family integrity under *Troxel*"). We affirm on an alternate ground. *See Morse*, 132 F.3d at 904 n.1.